and we'll turn to the next case on our calendar which is Anderson against Greene. Good morning, your honors. Hillel Parness, Parness Law Firm for the appellant Kevin Carroll Anderson. So, your honors, as you've seen, this case, while it never really got out of the gate into discovery, has had many things that have happened. We appeal quite a number of those. My eight minutes would not let me do justice to those. I think they're all dealt with in the briefs extensively on both sides. There were three things, though, that I wanted to touch on today. Equitable tolling, the fact that a contract was pled, and the fact that the district court applied the incorrect standard, the summary judgment standard, as opposed to the motion to dismiss standard, to certain portions of the district court's analysis when it should not have done so. And on the issue of equitable tolling, I actually want to start with a case that this court In that case, which was brought under the FDCPA, question was when somebody could bring a claim against its bank, and you have a one-year statute, and the facts were he waited a little bit over a year from the moment that he found out that his accounts had been frozen. And the language, when I read it just this morning, to be completely frank, struck me as being potentially relevant to us today. And this is on star pagination seven of the decision. So the court had set up, this court, in fact, had set up the situation that if there's going to be equitable tolling, they brought out the standard that we've cited here, that there has to be reasonable diligence under extraordinary circumstances. And the court said, seemed to recognize that they will start the clock, in other words, if they will allow for tolling, they will start the clock from the point that he had enough information to act on it. As it turns out, the court learned that the day the accounts were frozen was the same day that he learned about it. So there was no need to discuss equitable tolling for the past. And as far as equitable tolling going forward, the court found that the facts said that within 24 hours, he had amassed every That was a discussion of the discovery rule in Benjamin. In other words, there was no daylight between the actual act and the discovery of the act. Yes, Your Honor. And it's a little different. I agree with that, Your Honor. And the court ultimately found that he had enough information within 24 hours, and there was no reason to toll after the fact. But I do believe that what the decision stood for, as I read it, was the proposition that you could have equitable tolling on either side of the queue, depending on the facts. Now, in this case, we argue for extraordinary circumstances. And we argue for reasonable diligence under those circumstances. We recognize that cases are few and far between, where the court finds extraordinary circumstances and reasonable diligence, but we think we have it here. We allege in this case, and this goes to the third point about the standard to be applied. But we allege very clearly in the third amended complaint, which is the operative complaint at docket number 58, that in 1990, a contract was formed. And under that contract, the defendants were to provide a host of services to Mr. Anderson, to the appellant, for 5% of his income, and that would be ongoing. And Mr. Anderson, who was 30 years old at the time, had no college education and no financial training, wanted to, and the appellees encouraged him to, hand over the reins of his entire financial and business life so that he could go on the road, pursue his acting career, not have to pay any, live very frugally, and not have to pay any attention to his financial affairs. We allege that in the intervening 20 years, that's exactly what happened. He paid no attention to his financial affairs because of the specific oral contract that they had formed, that they would take over his financial life, and he didn't make himself aware of, and had no reason to, that anything was going on. We allege that the first time he learned anything was awry was in 2010, when he walked into a bank to cash a CD, found out it had been garnished, and started to learn. Again, using the resources that he has, which are not the resources that all of us have. The resources that he had to piece together that taxes hadn't been paid for a decade. And as a result, his finances had diminished. The IRS had garnished the CD and seized other assets, none of which had come to him. He continued to piece it together. He found IRS transcripts that showed that the defendants, who were his point of contact for all purposes, had received repeated notices from the IRS that taxes hadn't been filed. So whoever's fault it was not to file them, the defendants- Taxes were filed prior to 2000, for the first ten years? No, I don't believe, I'm not sure exactly when they stopped. I think they stopped being filed in 2006. I believe they were filed earlier. I believe they were. And he would have signed those returns, right? I don't know the answer to that, Your Honor. If he'd signed returns and all of a sudden he wasn't signing returns, I think that would be immaterial, wouldn't it? It could be, Your Honor. In terms of his notice? I don't know the answer to that, Your Honor. What I do know is that from the point forward, and I can check the record when I sit down. You're saying that anyway, from starting in 2000, his returns weren't filed. Some were filed before that, he signed those, but was unaware of the fact somehow that returns weren't being filed, notwithstanding nobody asking him to sign anything. Understood, Your Honor. So again, what we are arguing for is that under these circumstances here, the particular facts where this uneducated man handed over this responsibility. Those constitute extraordinary circumstances under the facts of this case and that he was reasonably diligent under those same circumstances. Now, before I run out of time, turning to the contract, we absolutely allege the formation of a contract, of an oral contract. It is correct that in the operative complaint, the third amended complaint, which was filed pro se as the three before it were, it does not have a cause of action for breach of contract, but as I cited to you in my reply brief, the cases of this court say you don't need to have a cause of action for breach of contract for the court to fulfill its duty to find whether a claim is there or not. I think that a fair reading of the complaint, docket number 58, along with the transcription of the conversation where we allege that the contract arose, show that we clearly pled the existence of a contract and that the court erred by not finding it. I'll point you to docket 58-1 at page 8, paragraph 23 is where we allege the formation of the contract. Paragraph 58-2 at 24 is the transcript of the conversation where the defendants, where the appellees said to the appellant they were going to take 5%. 58-2 at page 26 is where he says, okay, to me that is a, again, the transcript is not the contract. It was an oral contract, but the fact that we have this transcript of a recording made with consent backs up our allegations, which are reasonable and which have to be taken as face value that a contract was formed. And finally, 58-2 at page 38 is the letter from the appellees to the appellant telling him they're terminating. Telling him that he will not be their client anymore and they are resigning and they will not be his accountants anymore, will not be his financial advisors anymore. So we believe that a contract absolutely was pled and the court erred by not finding it and giving the pro se appellant the benefit of the doubt there to bring up to recognize that a contract is there. Thanks very much, Mr. Barnes. Thank you. You've reserved some time, but we'll hear from Ms. Kolach. Thank you, your honor. May it please the court. My name is Sari Kolach and I'll be arguing on behalf of all the appellees. I'm going to start with the second argument, which related to whether or not a breach of contract claim was stated in the third amended complaint. I don't believe the court applied the wrong standard because whether it's for summary judgment or for whether to state a claim in order to allege a breach of contract for an oral contract, you have to allege the specific terms of the oral agreement, the date at which it was entered. You have to identify the specific contractual provision that was breached and the damages that resulted from that breach. And the third amended complaint doesn't do that. What it says is, there was an initial letter from November in which Mr. Green said, these are the sort of services that we provide, and they refer to it as a prospectus. And it's in that letter where the scope of services they provide include taking over all aspects of someone's financial life. But there's no acceptance of those terms. And then if you look at the transcript that reflects the conversation that happened in December 1990, it is not clear from there the full terms of the contract. It appears there's some discussion that Mr. Green's going to take over paying some bill payment. But there's no discussion beyond that. They have back and forth about the types of investments that are available and the different things you should do to take care of your money. But there aren't specific terms of an agreement. There also isn't any specifically identified contractual provision that he claims was breached. In fact, there's nothing in that prospectus, I'm sorry, in that oral conversation where it says, I'm going to prepare your returns every single year. I'm going to sign them for you, and I'm going to file them. In fact, there is in the record, and this is at document number, I apologize, document number 92. This is a letter written by Mr. Anderson to the disciplinary committee as a reply to Mr. Green's response. And he says specifically in there, I know I'm responsible for my tax return. He goes, it is true that I am responsible for filing my taxes. But then he says, it is his job to prepare these returns, send them out to me wherever I am. Double checked, I receive them and sign them, and make sure these taxes get filed. So when April 2007 rolls around, and he hasn't received his 2006 tax returns from his accountant, and I think this probably predated e-filing, or let's take it to October if you file late. He knows that he doesn't have his tax returns, that they haven't been done. He is on notice as of that day, as of, let's give him April 2007. He then has three years in which he can bring a claim for those terms. It happens again the next year and the next year. He doesn't have to wait until he finds out in 2010 there's a lien. He's on notice before then that the taxes weren't filed. So if you look at the totality of the allegations and the complaint, including what he alleges constitutes the agreement, what he alleges the breaches are, and the damages that result, he has not stated a claim for breach of an oral contract. Let me ask you about one part of the record that perhaps you can clarify for us. The transcript of the December 4, 1990 meeting. Yes. You recall that. As incorporated in Mr. Anderson's third amended complaint. Yes. Why is that not sufficient to state a claim for a breach of contract? Well, it doesn't state the clear terms of the contract. If you read the transcript, there's a general discussion, and it isn't clear, it's certainly not, it isn't clear to me, and they don't allege a specific term from that contract that was breached. There's nothing in there, in that agreement, that says I'm going to file you tax returns. There's nothing in there that says I'm going to send you bank statements or I'm going to- Why doesn't he get beyond the initial stage of litigation so he can have discovery on that and perhaps have a trier of fact determine what the significance of that transcript is? Because it's like anything else, Your Honor, he has to first state a claim for breach of contract. He hasn't done that. He hasn't identified timely breaches. So even if you say that's a contract, you still have to identify a breach of that contract and damages flowing from that breach, and it has to be done in a way that would make that claim timely. He has a litany of complaints, but he doesn't, even if he doesn't associate it, the court couldn't associate that litany of complaints, and I couldn't associate that litany of complaints, with a specific contractual provision, and certainly nothing that was in a timely period. In terms of the equitable tolling, I confess I'm not familiar with the decision that was reached on Monday, but it doesn't matter, there are no extraordinary circumstances here. Every case involving equitable tolling has extraordinary circumstances and reasonable diligence. The extraordinary circumstances seems to be he doesn't have a college education. But there's nothing that says that the statute of limitation applies solely to sophisticated businessmen, and he's certainly an accomplished person. And so there's nothing, he hasn't presented anything that would justify equitable tolling. Thank you. Thank you. Yes, you've reserved some time. Thank you. Just briefly, again, I want to say something that I've said in each of my briefs. We allege the formation of an oral contract as alleged in paragraphs 23 and 24 of the complaint, which you can find at docket 58-1 at page 12. The transcript and the prospectus are not the contract, nor are they presented as the entirety of the contract. We claim that a contract is formed, we allege in our pleading, which should be taken at face value. Mr. Green states he agreed to be responsible for planning the financial future of Mr. Anderson, contract negotiations, receipt of all income, deposit all earnings, drawing checks to pay bills, maintaining records, all tax returns, wills, trusts, estate planning, insurance, supervision of investment program, determination of asset purchases, and all financial planning for an annual fee of 5% of yearly gross professional earnings, Mr. Green failed at all these services. So we allege that in the complaint. Yeah, but you have, here we have a transcript, and we also have letters, I believe, right? A letter from your client? There's a- From Mr. Red. There was a letter that preceded that conversation. Yeah, they had multiple meetings. The one we recorded, the one that was transcribed, is the one that's in the record. And in fact, the transcript cuts off, it notes that the recording cut off. But we're not confined to the complaint in reviewing this. We can look at the transcript and look at whatever the complaint refers to. Absolutely, Your Honor. Judge Walker, if you believe that the transcript conflicts with this, right, conflicts with what we say here, that's certainly within the court's purview. What Ms. Kolatch is saying is if you can't- Wait a minute, the transcript, as I understand it, pretty much captures whatever you're arguing, doesn't it? Well, Ms. Kolatch- Can't we forget the complaint and go right to the transcript? Well, Ms. Kolatch points out that, and again, I've quoted the transcript extensively in my brief. I think everything is in there. But if something is not there, if some specific task is not in the transcript, that doesn't mean it wasn't part of their oral contract. We never proposed, we never presented, again, pro se Mr. Anderson never presented the transcript as the end all and be all of what the contract was. He was presenting it to support his recollection of what had been discussed, what had been decided. But we never said, he never said that that transcript was the entirety of that contract. Thanks very much, Mr. Parnas.